Good morning, Your Honors. My name is James Todd Bennett, and I represent the appellant Rajinder Paul Singh in this habeas appeal. I'd like to reserve two minutes, if I may. This case basically presents the next step beyond Singh, which was the jurisdictional case decided by this court back in 2007. In this case, we have a failure to notify of a BIA decision. The issue, since that is an error, an omission that occurred after the entry of the final administrative order, it clearly falls within Singh jurisdiction. So I believe the court was correct the district court was correct in finding jurisdiction under Singh. The question then becomes, the issue that wasn't answered in Singh but was discussed as to what the district court could do after a remand, is whether or not there is any remedy or any jurisdiction, really, by the Board of Immigration Appeals to resolve the issue. First of all, there's no mandatory jurisdiction to exhaust administratively before the habeas is filed in this case, because the proposed remedy by the government would have been a motion to reopen, which is discretionary, not mandatory. So as far as a mandatory exhaustion goes, under Noriega-Lopez, I don't believe there is no mandatory exhaustion. There isn't. There isn't. Why couldn't the court have prudential exhaustion, though, which is also available? I mean, that's the question left open in, I guess we'll call it Singh No. 1. We said we don't know what procedural or substantive hurdles the U.S. might one might find in the district court. Here the district court said you should exhaust. Why isn't that reasonable? Yes, Your Honor. Under the prudential doctrine, the first issue we have to address to fully understand why a prudential doctrine doesn't apply in this case is, does the BIA even have in the first instance jurisdiction to issue a or even consider the issue on a motion to reopen? Our problem is this is a regulatory scheme, and this is a regulatory agency, and it's controlled by its own regulations. The problem here is for a motion to reopen, the BIA has to have a decision, and then the reconsideration has to be of that particular decision. And decision is not really defined specifically in the regulations, but in at least two regulations, in 1003.1F and also G, it does discuss a written decision. So then the question, and then in addition, as pointed out in the brief, a motion to reopen has to consider, excuse me, new facts. So we first have to figure out whether there's been a decision by the BIA and then whether there's new facts that can be considered. Tell me, before you go any further, we now have this new statement by the Attorney General of the United States, which he says is going to take effect immediately. Now, you've used the regulations, but what about the Attorney General's new determination of how we get to this particular issue? Interesting question, Your Honor, and that is under COPIAN. Thank you. I'm sorry. It's under COPIAN, a very interesting decision. First of all, the judge, excuse me, the BIA, as in the dissent in Singh, finds that there's no Fifth Amendment right to due process or, excuse me, no Fifth Amendment right to an effective assistance of counsel. So it's not constitutionally based. It's just you have a statutory right to counsel, and that's it. How that impacts this case eliminates one of the probably the primary and probably the only remedy that the government can propose, which is the tolling statute. As I understand the tolling precedents in this circuit and in other circuits as well, it's constitutionally based. It's a Fifth Amendment due process claim. Here the Attorney General has withdrawn Lozada. He's withdrawn Lozada, which basically says we're recognizing there are circuits to say there's a due process right here, and so you have to go through these steps to do it. Now we no longer have the Fifth Amendment basis for the administrative order. For the administrative motion to reopen, rather. I'm sorry. So if it's not, if you can't toll, if there's no constitutional issue. So even though this circuit has law under Lozada addressing Lozada that would say that if it was appointed. Ginsburg. Can I stop you there? It seems to me there's kind of two parts to this. One is now the BIA says, oh, well, surprise, we've landed on a position here in the last, you know, 28 days of the Bush administration. We do have jurisdiction to reopen. We also have made this constitutional ruling. It seems to me those are two separate things. If you sent it back for exhaustion under the theory of exhaustion could, I mean, that they could reopen. In other words, they have the authority to reopen. Then you would get an answer. But the answer wouldn't have to be predicated on a constitutional aspect of the Attorney General's ruling, would it? Well, the problem is, is the controlling statute. There's three levels of which you could probably get a case like this reopened in the government's theory. First one's the statute. That's clearly out the window because it has a 90-day bar on it. Right. That's long since gone by the wayside. Second one would be a filing an administrative motion sua sponte to reissue the decision. That is problematic because under the Attorney General's own decisions and regulations, you can only do that if it's an error by the BIA itself, which clearly isn't the case here, or essentially that's what they're looking for. And if you can't find that, then sua sponte doesn't apply. And anyway, in any event, that's a discretionary decision that's not reviewable under the precedence of the circuit in under Akeemian. Now, going to the tolling issue, that's the ---- Sotomayor, what about a motion from the Petitioner to reopen out of time because of extraordinary circumstances of what's happened here and simply making a motion to reopen and then seeing what the answer is? Well, under Copian, that pretty much puts an end to that because if it's a Fifth Amendment-based claim for tolling, the Fifth Amendment no longer applies under Copian. So if the Fifth Amendment doesn't apply, then you don't have tolling anymore. Well, wait. Two things there. Leaving tolling out of it, you don't need the Fifth Amendment to say to the BIA, look, I didn't get to file an appeal, and all I want is to reopen so that we can reset the date and then I can get a lawyer who understands, you know, 30 days and we file the appeal. Why couldn't you do that? Then you're concerned because you don't think you think you'd be out of time if you lost for a potential habeas. Is that the problem? No. I just think that the toll ---- aside from my argument that there's no tolling at all, period, under Copian as a result, if there's no constitutional basis, where's the tolling? You don't need a constitution for tolling. I mean, in other words, the BIA is not the habeas forum. I'm just ---- you know, this is a complicated issue, as I know you appreciate because you understand all the intersection of these laws. But if you just go back to the BIA and you say, look, now you've said that you have jurisdiction for sure to take a look at this, I'm just asking you, my client never got to file an appeal. I'm not asking for you to say it's a Fifth Amendment right or a constitutional right related to ineffective assistance counsel. I'm just saying, here's the situation. Please reopen. And then the attorney ---- the BIA will say yes or no. Why couldn't you do that? Why wouldn't it be reasonable for you to exhaust that remedy before coming to the Federal court and invoking a potential constitutional remedy? To answer the question working backwards from Copian, Copian basically takes a super big scoop of jurisdiction out of the judicial review statute in terms of still having jurisdiction over post-decisional errors such as this. The problem is, under the Attorney General's own regulation, and with all due respect to his representations in Copian, his regulations do not provide for that kind of jurisdiction. It's very clear what the jurisdiction is. You review a decision, as I was discussing earlier. But then it seems to me that's a ---- in other words, that's another layer. It's kind of like each one peeling back. Singh left this open. If you went back and you exhausted and the Attorney General said, yes, we'll reissue that, you wouldn't argue with him, right? As a practical matter, no. Okay. As a matter of law, yes. Problem solved. You don't have to argue with the Attorney General over that. If the Attorney General then says, oh, catch-22, I have Copian, but I have this regulation, so it doesn't mean what it says, then you would have an appeal on that issue, which would really relate to a legal issue and the precise issue you're now raising. So in other words, you might win, and then you wouldn't need us. If you lost, you would have the potential to come back, depending on the posture of the case. I see my time's up. Please go ahead. I fully appreciate the Court's interest in limiting the number of immigration cases coming into this Court. I think that's been a longstanding problem. But I don't think that this mechanism is really practical in this sense, in this case in particular. First of all, Singh is no longer in the country, so there's no longer any jurisdiction for a motion to reopen. So to fashion a remedy, if this Court were to remand and ask for – if I were to ask for leave to file under Copian a motion based on this new decision, it would have to be accompanied by an order to bring Singh back into the country in order to acquire jurisdiction. So that would be an alternative remedy based under Copian if this Court finds a remedy. So he's not in the country and he's not in custody. Correct. He's out of the country. Now, at one point in history, that would give habeas jurisdiction. In fact, it gives habeas jurisdiction because it was removed while it was filed here. But the problem for administrative jurisdiction, it does not. They've lost jurisdiction. Now, in the past, as a practical matter, through negotiation, we've been able to negotiate the return of the alien in order to reinstitute jurisdiction and then start over again. But that would be the only way that Copian could, as a practical matter, apply at this point in history. Okay. Well, why don't we do this? Let's hear from the Attorney General and see if we can keep sorting this out. Thank you very much. Thank you. I think we can hear you. And if we can't, we'll tell you. How's that? Keep your voice up, please. Thank you. Well, to be fair, up until that point, the Petitioner didn't have a ghost of a chance of any type of claim after the final order has been entered. And it's only because the Attorney General, in his wisdom and good judgment, now says that even though the ineffective assistance or what does he call it, occurs after the final order, we will now take a look at it. So it may be that the district court was wrong but has become right by the Attorney General's determination. So I suppose what we really have to decide is whether or not, in fact, because of the Attorney General's change of how he's going to handle these cases and apparent willingness to entertain ineffective work of counsel subsequent to the final order, whether or not the district judge becomes right now and that counsel's got to go to the BIA. Now, that issue is the one that's before us. And counsel says, I can't do that because the Petitioner's out of the country and is not under jurisdiction. Now, we need some help from you, representing the Attorney General. How do we deal with that? Well, let me take your first point, Your Honor. I don't think that the most reasonable or accurate reading of the Attorney General's intention at any point. I think that the Attorney General did recognize that the BIA has taken, or at least consistent decisions from the BIA in the past as to whether or not he has jurisdiction to entertain a motion to reopen that BIA decision. In this circuit of how it works, it's clear under matter or a here and here and above that this circuit has said the BIA has the authority to entertain a motion to reopen it, even after the end of the final rule of order, and that an alienate should follow that procedure. I can actually read the language to you from law to the INS. 204, Mr. 1241, this court issued in 2000. And on pages 1245 and 1246, the court says, The person notes that, because of the insistence of which the complaint occurred after the board's review, this appeal is the first instance in which he had a written complaint. This is not, however, the first form to which he might have complained. Indeed, the board has laid out a comprehensive procedure that a petitioner should follow and sports such a complaint that our circuits haven't gotten for such a reason. But this circuit has said, and obviously this circuit controls, that there is a procedure that a petitioner has to follow, even after the alleged ineffective assistance has occurred. Here's my question about that. I don't know exactly what the Ninth Circuit meant when they said that, because if you look at those cases, they're really Lozada cases, and this district court didn't say you didn't follow Lozada, in effect, which is a whole separate thing. And so I'm wondering here, assuming Lozada is in effect at the time all of this is filed, I'm not sure Lodda fits quite precisely to this district court's order. I understand, Your Honor, that the cases that Lodda relies upon may not be fully supportive of the decision in Lodda, but that you have Gearinger reiterating the holding of Lodda. And whether or not the reasoning in Lodda and Gearinger, I think that's the law of the Ninth Circuit. And I think he just guessed there was some potential doubt as to whether or not if the petitioner had followed that procedure, what the BIA would have done. And conceivably the BIA may have said, sorry, we don't have jurisdiction to address this. Well, your remedy at that point is to say the wrong BIA and file a petition for review in the Ninth Circuit. I think the possibility that the BIA might not do what you want it to do doesn't excuse your requirement to exhaust your administrative energy. Wasn't it actually not foreign, dear, that says a claim of ineffective assistance may, recurring after the BIA ruled, may be raised with the BIA by a motion to reopen? And it goes on to say, however, failure to do so does not bar this court from hearing the claim. And I think that's sort of a connection to the distinction that we made, is that as we're saying in this case, the district court does have jurisdiction. Of course, that's not going to make the discourse of me and Omar keep saying, hey, that's clear. But whether or not the court has jurisdiction is a different question than whether or not assuming the district court has jurisdiction, whether the district court should say, okay, you need to exhaust your administrative remedies. Well, is it true that if we were to uphold the district court's order here and he went back to, quote, exhaust his remedies, that he really can't do that now because he's out of the country? Well, just two things on that question. First of all, I think the appropriate time to be looking at this is at the time of the final escapism petition. At the time of the final escapism petition, he was in his country. Yes, but that's not the question you're asking. Well, my question is, if he comes now, is the BIA going to say it's a matter of law, out of luck, Charlie, you're not in the country, or is it going to say, I'll take a look at it? I don't know the answer to that question. I think generally. Do you want to know the answer? In other words, another option, which no one's mentioned here, is just a practical resolution internally, administratively, with this particular petitioner to get an administrative restart date in effect so that he can do whatever he's going to do in terms of filing an appeal. So I just say that that's an option one could consider between the government and the petitioner. And obviously that's something I will address with my client if the panel is willing to do that. I will say, though, again, the answer is unclear, and I haven't appointed any regulation on a petitioner saying that the BIA will not entertain a motion to go ahead in this context to act on the BIA's decision simply because the petitioner's not here. But again, I think the answer is unclear. His response is that BIA says that you don't have – it doesn't have the authority if the person is out of the country at least to do it in response to a motion to reopen. I understand what you're saying. My response to that is I'm not sure the regulations tell you that proposition, but my response would be file your motion. See what the BIA says. The fact that I don't think you can say it is futile to do that. If his regulation – let me just ask you this. I hear his argument as one of futility. You have prudential exhaustion, and one of the end games of prudential exhaustion is whether there's futility. If he has a regulation that's – and he says to the court, the district court, it would be futile because now that my client is out of the country, there's nothing that can be done. Then it would seem to me that there's a futility question. Now, maybe that's something the district court needs to resolve, not us. But if the district court or us said, yes, you're right, there is no jurisdiction under the regulation and it would be futile, then what is your response? Well, I think that would present a different question than if the district court could say, well, it is futile. If at the time this case was already in the district court, the hearing had been removed and the district court had said, under this regulation, the BIA no longer has authority to do what the district government is telling it to do, the district court would have addressed that. That wasn't the case. The time that he was in the district court was five minutes. The district court decided it was the case. I think that that's the relevant time to look at it. As in the case of Cuba, which is another case, I think the BIA court addressed it in the same situation, where the BIA said it would remove some time at the time this court decided the case. But this court said, you have the requirement, you have the time. And the district court's proceedings were going on to exhaust the administrator. And it's the fact that now you might be time barred. That's unfortunate, but that's the law of our circuit. That's a credentialed matter. You have to talk to the district government. The court didn't say, well, now that you're going to move to the country, you know, our analysis is going to change. So I think, you know, finally, you can attribute it. The fact that he's now in the country shouldn't exceed the fact that he could have exhausted the administrator by many different times. Mr. Olson, your time is running down. Did you finish? Go ahead. Your time is running down. Well, I wish you'd tell us what, in your view, is the bottom line of this court's decision on this case as it is presently questioned. In terms of what I think the result should be in this case. Yes. I think the result should be that this court should affirm the district court and say that, as a credentialed matter, it only should have exhausted the administrator by many different times. And then, even then, the district court said, well, okay, I excuse the fact that you didn't do that, that the district didn't provide the district court with any evidence that would have helped the district court to make the ineffective counsel determination. I mean, there was this allegation between the agency and the district that, hey, my attorney didn't provide enough time for the district court to review. But the district court needed more than that to make a determination. You know, we didn't have the opportunity to hear from the defense counsel. Unlike here, where it's undisputed that the petition for review was filed on the day of the hearing, we don't know. What we do know is that the petitioner may or may not have been the attorney who filed the petition for review. They may have had a conversation. Does this add to her credibility? Fine. I think it's important to find evidence. If you don't have a prayer to discuss tonight's circuit, we're not going to file a petition for review to see how much time you can buy before you have to reflect. There may have been any number of rational explanations for why a petition for review is not required. We just don't know. And I think it's the attorney's obligation. He wants the district court to excuse his lack of compliance with the administrative requirements. He has to give the district court something that will help the district court make a determination. And nothing has to stop him. Thank you. Let me ask a question if I could. Let's assume for sake of argument that the situation was one where the board would not consider petitioner's claim because the claim began after the final order. So in that instance, the district court was wrong because there's nothing to exhaust. Let's just assume that. If we assume that, does the district court then become right because the attorney general says here that he thinks the better view is the jurisdiction to consider deficit performative claims where they are predicated on lawyer conduct that occurred after the final order of removal has been entered. So he has changed, if there was a change. He has changed and now said the board does have jurisdiction. So then does that make the district court right? And under the new game plan, he has to go to the board. I think that's right. Even if the attorney general is right, there is a right to make a decision. He has to go to the board. If he changes it, the board has discretion to entertain his testimony. If in fact the board wouldn't have listened to him initially, then it was futile and the district court was wrong. If we assume that was correct ruling, it would be the position of the government that that has now been changed by what the attorney general has changed and he now has the ability to go to the board. So then the next argument would be is that, when he goes back to the district court, the next argument would be that is futile because I can't get any jurisdiction. My client is not here in the United States. Would the statement by the attorney general be sufficient that the board would entertain the petition even though the petitioner is still out of the country? To be honest, Your Honor, I'm not sure what the DI is saying in that situation. That's not spelled out in any piece of paper. I don't think that the AG is contemplating the situation of whether or not he has jurisdiction in entertaining that petition. We could ask you that question and you could provide us an answer on behalf of the attorney general, correct? If we were to ask that following argument. I was of the opinion that he had thought about it because in his document he indicates a view about tolling to allow this to happen. And I had assumed that the board would take a look at it and grant, because he had jurisdiction before, that tolling allows to have jurisdiction. It may be that there's a lot of these questions that will now have to be sorted out because of what has transpired. And it might be that we can't do much for you other than send it back and let the district court order apply and see what happens when counsel goes to the board to see if they can sort it out. I suspect there's a lot of unanswered questions. But as far as you're concerned as of now, you really can't assert what is going to happen. That's true. And I agree, Your Honor, there may be all sorts of unanswered questions. And I think for purposes of this appeal, I don't think those questions need to be sorted out. But at this point in time, the district court will have to issue a court order to apply. Those questions may be answered in future meetings. I don't think this is the case. Well, that brings up the issue of can we now look at it in terms of the attorney general's letter. You're suggesting that because the district clerk was right at that time that we don't need to look into that. But doesn't the attorney general's has now said this goes as of now. Don't we have to give that credence? Or does that occur only for filings that take place after the attorney general's letter? The attorney general's recent opinion is completely consistent with the approach that the government has taken in this case from the outset as well as the approach that the district court took in this case. But there is the ability. The DA does have the authority to entertain questions for the open. And the DA should have asked the DA to do that. Now, and I think not only the DA, but the DA said that at any time previous to the DA's recent opinion, that the DA didn't have that approach. And I don't think that's a fair way to sit down. It was mixed. It was mixed. It was mixed. I mean, it depended on which panel. And so it was unclear. At paragraph D, he outlines the split. And then he says, in my judgment, the better view, the one I adopt today, is that the board has jurisdiction. So apparently he's recognizing that it depended a lot on what circuit you filed in. And I think that's wrong. And so he recognizes there were some consistent decisions. And he recognizes that it may have depended on the circuit. In this circuit, the next circuit is done. The DA has that authority. Also, I think the fact that there were inconsistent decisions from the DA on that question doesn't excuse the position of obligation to ask the DA. So your view is that when we decided to sing, we didn't leave this issue open. It was already decided in the Ninth Circuit? Okay. Okay. Thank you. Mr. Bennett. Sorry to run you over. It's an interesting issue. Do I get my two minutes? At least. Thank you. I probably won't use them all. First of all, I just want to reiterate that our position, I don't want to indicate that we're withdrawing basically on a practical matter under COPI on the fact that there is a decision, and that is beyond the regulatory scope of the jurisdiction of the Attorney General. Now, he can draft a new regulation, but at this point in history, regulatory definition of what a decision is and that being necessary for any motion to reopen under his regulations precludes this review of this particular error and omission that occurs after the issuance of the decision. How do you square that with the Ninth Circuit's view in Latta and Derringer that you have to exhaust in precisely this kind of a situation? I don't think Derringer says you have to exhaust. I think it more or less says in habeas setting, you know, be nice if you did, but it's not necessary. What about Latta? Latta is the interesting question. Latta has long been regarded as being the threshold case that adopted Lozada in the Ninth Circuit. The problem is it's essentially dicta in this sense. Latta was a petition for review proceeding in which there was a failure to prosecute. It was dismissed, and it was essentially a petition for reinstatement, reinstate the or recall a mandate, rather, and reinstate the proceeding. The Lozada portion of the decision is simply saying, well, there's this mechanism out here, but it doesn't really apply to this particular case because this is he's already gotten a petition recall. She's gotten an extra year here, and every, you know, she should be happy. And Latta's not a habeas case, correct? Exactly. It's a judicial review case. Right. And with the withdrawal, Lozada kicks yet another brick out from under Latta as any kind of precedent in determining where the jurisdiction lies. As far as the lack of evidence, that issue wasn't raised downstairs in the district court, and I don't think it could be fairly raised on appeal unless we have a cross appeal. And we just simply don't have one here. So I don't think that issue is properly before the court at this point. And I have no more comments at this point. Any questions? Thank you. We thank you both for the arguments. It's an interesting case given the intersection of the new opinions. So we appreciate your argument. The case just argued abstain versus church office submitted.
judges: Wallace, Farris, McKeown